IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| KENNETH L. BLAKE, SULTAN LANE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 10-CV-6063-SJ-FJG |
| | ) | |
| SCOTT COOPER, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Plaintiffs are prisoners at Crossroads Correctional Center ("CRCC") in Cameron, Missouri. Initially, plaintiffs sued the Missouri Department of Corrections and numerous other correctional and CRCC employees for failing to accommodate their Muslim religious beliefs. Plaintiffs' claims were brought pursuant to the 42 U.S.C. § 1983 (First Amendment Free Exercise Clause) and 42 U.S.C. §2000cc-1 (Religious Land Use and Institutionalized Persons Act)("RLUIPA"). This discussion focuses only on the First Amendment claim, as there is no individual liability under the RLUIPA[1]. Plaintiffs initially asserted fourteen separate claims. On September 11, 2012, the Court granted defendants' Motion for Summary Judgment on all counts except Claim No. 11 and dismissed all defendants except Scott Cooper. Plaintiffs Sidney Lanier and Lloyd Davis were also dismissed as parties. Thus, the only claim which remains is that defendant Cooper denied plaintiffs the "opportunity to break their daily fast with . . . dates prior to

---

[1] Waff v. Reisch, No. Civ. 07-4166, 2010 WL 3730114, *11 (D.S.D. July 30, 2010)("RLUIPA does not authorize individual capacity claims against prison officials."); Van Wyhe v. Reisch, 536 F.Supp.2d 1110, 1118(D.S.D.)(same), aff'd in part, rev'd in part on other grounds, 581 F.3d 639 (8th Cir.2009).

observing Salat-ul-Maghrib [prayer at Sunset] for the entire month of Ramadan (2009)[.]"

In the September 11, 2012, Order, the Court found that plaintiffs Blake and Lane had satisfied the substantial burden test established by Jihad v.Fabian, 680 F.Supp.2d 1021 (D.Minn.2010). The Court in Jihad stated, "[a] substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate reasonable opportunities to engage in fundamental religious activities." Id. at 1026 (quoting Van Wyhe v. Reisch, 581 F.3d 639,656 (8th Cir.2009)). However, upon further review, the Court has determined that plaintiffs have failed to satisfy the substantial burden test with regard to their claim that they were not allowed to break their fast with dates.

In Maynard v. Hale, No. 3:11-CV-1233, 2012 WL 3401095, (M.D.Tenn. Aug. 14, 2012), the plaintiff alleged that the defendants had interfered with his ability to fast during Ramadan, by failing to give him pre-dawn and evening meals. The Court stated that even assuming plaintiff's allegations were true and that the Chaplain may have been responsible for plaintiff missing a pre-dawn meal on one day,"missing one meal did not affect Plaintiff's good health or his ability to practice his religion. Moreover, a short-term and sporadic disruption of his Ramadan eating habits does not, under these circumstances, allege a substantial burden on his religious freedom." Id. at *4. Similarly, in Crump v. Best, No. 10-13787, 2012 WL 1056806, *8 (E.D.Mich. Mar. 5, 2012), the Court found that having to eat cold or uncooked food on six occasions was not "sufficiently serious so as to constitute a 'substantial burden' on Plaintiff's ability to observe the Ramadan holiday in violation of the RLUIPA." In Griffith v. Hofmann, No.

2

2:05CV126, 2008 WL 4682690 (D.Vt. Oct. 21, 2008), the prisoner complained that during Ramadan, his meals were smaller than usual and they were cold. The Court however dismissed his claim, stating that he had made no showing that either portion size or temperature was a requisite part of the Ramadan meal and that his religious practice had not been 'substantially burdened.' Id. at *7. The Court noted, "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored. In this respect, this area of the law is no different from many others in which the time-honored maxim 'de minimis non curat lex' applies." Id. (quoting McEachin v. McGuinnis, 357 F.3d 197, 203 n.6 (2d Cir.2004)).

Similarly, in the instant case, the plaintiffs are claiming that they were not allowed to break their fast by eating dates before they attended the evening prayer service in the chapel. In his deposition, plaintiff Blake testified that according to a August 3, 2009, Memorandum discussing the procedures for Ramadan, the inmates were supposed to be provided dates to eat in order to break their fast. However, Blake asserted that defendant Cooper did not want to give the inmates the dates, saying it was an interpretative issue. However, Blake admitted that the dates were placed in the food bags, which were given to the inmates as they left the chapel. (Doc. # 133-1, pp. 88-89). Similarly, plaintiff Lane stated in his Declaration:

> As stated in Claim # 11 of the second amended complaint, Correctional officer Scott Cooper refused to provide me with the dates for daily fast-break during Ramadan 2009. Correctional officer Scott Cooper had the dates placed in the Ramadan 2009 brown bag meals. Per the August 3, 2009, memorandum of Darin Morgan, Correctional officer Scott Cooper did not pass out the Ramadan 2009 brown bag meals until after completion of Salat-ul-Maghrib (Prayer at Sunset) and upon release of the Ramadan 2009 participants from the chapel. However, in accordance with Islam, I am required to break my fast with dates prior to observance of

3

> Salat-ul-Maghrib. Because the dates were placed in the Ramadan 2009 brown bag meals, outside my access, I had to break my fast with water, rather than the dates, contrary to the August 3, 2009, memorandum of Darin Morgan.

(Doc. 139-1, p. 13). The Memorandum cited by plaintiff Lane does state that inmates will be provided dates or other approved fruit for daily fast breaking. The Memorandum further states that "[s]ack lunches are to be delivered to the Chapel from food service within appropriate containers, one for the sack lunch with CRD contents and the other for remaining additional sacks." However, the memorandum specifically states that "Food consumption **IS NOT** to occur within the Chapel." (Doc. # 133-18, pp. 1-2). Additionally, there was an earlier memorandum dated June 3, 2009, which stated that "[e]ach institution will determine the place where the fast will be broken." (Document 133-17, p.2). Thus, it is not clear that defendant Cooper violated any institutional directive by having the inmates wait until after they left the chapel before passing out the sack lunches, which contained the dates, because the Memorandum clearly indicated that food was not to be consumed within the chapel and also because of the earlier memorandum which gave institutions discretion as to where the fast was to be broken.

However, even if it is assumed that Cooper violated the directives in the Memorandum, the Court finds that the violation was de minimis and did not place a "substantial burden" on plaintiffs' ability to practice their religion. Plaintiff Lane even admitted in his Declaration that he was able to break his fast with water. Plaintiffs made have preferred to break their fast by eating dates, before their evening prayer service, but they have not shown that they were completely prevented from breaking their fast.

4

As such, the Court finds that the denial of the dates was a de minimis violation and did not constitute a substantial burden on plaintiffs' free exercise of their religion. Accordingly, the Court hereby **GRANTS** defendants' Motion for Summary Judgment on Claim No. 11.

Date: <u>February 12, 2013</u>　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge